## A. G. PACE ET AL. v. J. M. SMITH.

(Case No. 1315.)

1. PROCEEDS OF ATTACHED PROPERTY — GARNISHMENT OF.— Where property attached has been sold as perishable, and afterwards the writ of attachment is quashed, and the clerk ordered to pay over the proceeds to the defendant in attachment, those proceeds in the hands of the clerk are not subject to garnishment.
2. See the opinion in this case for the views of Associate Justice Bonner on this question.

APPEAL from Hunt. Tried below before the Hon. Green J. Clark.

The opinion states the case.

*Mathews & Neyland* and *E. W. Terhune*, for appellant:

I. The attachment having been quashed in the case of Schneider & Davis *v.* Smith, the money was no longer *in custodia legis*. The attachment in the original case of Schneider & Davis *v.*

Smith was quashed, and the money held under it was ordered paid to the defendant. Gasquet v. Collins & Campbell, *ante*, p. 340.

II. If the money was not *in custodia legis*, it was subject to garnishment. Drake on Attach. (4th ed.), §§ 508, 509; Dunlap v. Patterson Fire Ins. Co., 30 Am. Rep., 283 *et seq.*

III. A process by virtue of which money is held having been satisfied or quashed, the money remaining in the hands of the officer belongs to the defendant, and must be paid over to him, unless the officer is prevented from doing so by legal process. Hamilton v. Ward, 4 Tex., 367; Walton v. Compton *et al.*, 28 Tex., 569; Gasquet v. Collins & Campbell, *ante*, p. 340; Drake on Attach., §§ 508, 509; Dunlap v. Patterson Fire Insurance Co., 30 Am. Rep., 283 *et seq.*

IV. The clerk of a court of record having money in his hands by virtue of legal process is governed by the same rules as other officers. But when, from any cause, the money is ordered paid to the defendant, the clerk becomes a debtor to the defendant to the amount in his hands, which is due on demand, is assignable, and therefore subject to garnishment. Drake on Attach., § 509; Dunlap v. Patterson Fire Ins. Co., 30 Am. Rep., 283 *et seq.*

*Perkins, Gilbert & Perkins* and *Uptergrove*, for appellee.

I. Money once *in custodia legis* cannot be withdrawn therefrom except by due administration of law. Drake on Attach., §§ 493–4; Brooks v. Cook, 8 Mass., 246; Bivens v. Harper, 59 Ill., 21; 11 Me., 185; 11 R. I., 116; 2 Har. (Del.), 349; 15 Ala., 66; 1 Cranch, 117; 2 Hayw. (N. C.), 171.

II. Money obtained by the sale of attached property is returned into court and is *in custodia legis*, and is deposited with the clerk simply for safe keeping. R. S., art. 174; id., arts. 1458–1460; People *ex rel.* Tremper v. Brooks, 29 Am. Rep., 534; note under Hardy v. Tilton, 28 Am. Rep., 35.

III. The attachment being quashed, the law provided that the money should be paid to appellee. R. S., art. 182.

IV. This being the mode provided by law for the withdrawal of the money from the custody of the law, the money remained in such custody until the law was obeyed. Taylor v. Gillean, 23 Tex., 514; Dawson v. Holcomb, 13 Am. Dec., 618; 3 Ired., 365; Sayles' Texas Practice, secs. 365, 390.

V. To that part of the fourth proposition which says, " But when from any cause the money is ordered paid to the defendant, the clerk becomes a debtor to the defendant to the amount in his

hands," etc., we have this objection: *First.* Money in the hands of the clerk is held by him in his official capacity, and not individually. R. S., arts. 1458–1460; Freemont *v.* Cruppers, 10 Cal., 211. The order to pay out is to him in his official capacity, and not individually. R. S., art. 182. Upon his failure to pay over the money, the defendant would have a right of action against him officially. R. S., art. 1460. His duty to pay the money upon the order of the court is an official duty, and not an individual debt of the kind here suggested by appellants. R. S., arts. 182, 1458; People *ex rel.* Tremper *v.* Brooks, 29 Am. Rep., 534.

VI. Money *in custodia legis* is not subject to garnishment, and the answer showing that the money was held by the clerk in his official capacity, and no other reason being given for a failure to pay over, except the service of a writ of garnishment, it was subject to exception.

BONNER, ASSOCIATE JUSTICE.— On December 14, 1881, Schneider & Davis instituted suit in the district court of Hunt county against J. M. Smith, and at the same time sued out a writ of attachment. This was executed by levying upon certain personal property belonging to Smith, which, being perishable, was, by order of the court, sold by the sheriff of Hunt county. The net proceeds of this sale, $413.94, was, as required by statute, deposited with A. G. Pace as the clerk of said court.

Subsequently, in February, 1882, on motion of defendant Smith, the attachment was quashed, and the money ordered to be paid over and delivered to him.

The present suit is one of *mandamus*, brought by Smith, the defendant in the attachment suit, against Pace, the clerk, to compel him to pay over this money as ordered by the court, alleging in addition to the above facts, that Pace had failed, neglected and refused to pay over the same after demand therefor.

Pace answered that he had been served with a writ of garnishment which had issued out of said court in the above stated case, by Schneider & Davis. That he then had, and still has, the money in his possession. The original suit was still pending. Schneider & Davis sought to intervene in the *mandamus* suit.

On the final hearing a demurrer was sustained to the answer of Pace and to the petition of intervention of Schneider & Davis, and the same were stricken out, and a peremptory writ of *mandamus* ordered, requiring Pace to pay over to Smith said sum of $413.94. To which judgment both Schneider & Davis and Pace excepted and prosecute this appeal.

The statute requires the proceeds of such sales to be paid by the sheriff to the clerk. R. S., art. 174. That he seal up the identical money in a secure package, and deposit it in some safe or bank vault, subject to the control of the court; and if still on hand at the end of his term of office, that he turn it over to his successor. Id., arts. 1458–9. It is further provided, that, if the attachment be quashed or otherwise vacated, the court shall make the necessary order restoring the property to the defendant. Id., art. 182.

Whether the money in the hands of Pace as district clerk was so *in custodia legis* as not to be subject to the process of garnishment, is the question presented for our determination in this case.

I am instructed by a majority of the court to answer this question in the affirmative.

The general rule, that property in the custody of the law is not subject to garnishment, is too well settled upon authority to be questioned. Drake on Attachments, ch. 22; Freeman on Executions, §§ 129–133, both referring to numerous authorities; Taylor *v.* Gillean, 23 Tex., 508; Edwards *v.* Norton, 55 Tex., 405. This, beside other officers, includes receivers, assignees in bankruptcy, disbursing officers, sheriffs, clerks, executors, administrators and guardians. The general principle underlaying this doctrine is, that " no person deriving his authority from the law, and obliged to execute it according to the rules of law, can be holden by process of this kind." Brooks *v.* Cook, 8 Mass., 246.

This rule is based, in part at least, upon the confusion and conflict of jurisdiction which might ensue if such property is subject to a different process from that under which it is held; and the inconvenience, cost and possible risk which would be incurred if parties, who have no personal interest in effects held by them officially, should be subject to such process. The reason of the rule as applied to executors and administrators is thus stated in Shewell *v.* Keen, 2 Whart., 339: " An executor or administrator is, to a certain extent, an officer of the law, clothed with a trust to be performed under prescribed regulations. It would tend to distract and embarrass these officers if — in addition to the ordinary duties which the law imposes, of themselves often multiplied, arduous and responsible — they were drawn into conflicts created by the interposition of creditors of legatees, and compelled to withhold payment of legacies without suit; to suspend indefinitely the settlement of estates; to attend perhaps to numerous rival attachments; to answer interrogatories on oath, and to be put to trouble and expense for the benefit of third persons, no way connected with the estate, nor within the duties of their trust."

Some of these reasons might well be applied to garnishments against district clerks, and the additional reasons of the embarrassments which would arise from a failure to make answer in due time, or by reason of an insufficient answer; or which might arise in the event the garnishment proceedings might be pending when their terms of office expired. Another reason, and which has much weight with one member of the majority of the court, is, that, as the writ of attachment was quashed, it may be presumed that the same was irregularly or wrongfully sued out, and that the plaintiffs in the attachment suit should not be permitted to take advantage of their own wrong. That having caused the property to be improperly taken from the possession of the defendant Smith, they should not be permitted to follow this up by having the proceeds garnished. That the judgment of the court under the law attempted to correct this wrong by ordering a restitution of the property, and neither Schneider & Davis nor any one else should be permitted to defeat this purpose.

The above are substantially the considerations which induce the majority of the court to an affirmance of the judgment. The individual views of the writer lead to a different conclusion.

The general rule is fully admitted; the difficulty arises in its application. It is believed that the circumstances of this case take it without this general rule, and hence that it should not govern.

In the case of receivers, who are appointed generally by the court to take charge of property pending litigation, and to hold it subject to the order of the court, their possession, being derived solely from their appointment by the court, is the possession of the court itself until they are finally discharged; and hence the property is strictly *in custodia legis.*

The district clerk into whose hands the money in this case was deposited held his office, not from the court, but under the law, and his duties were defined by statute. Although this statute provides that, in the event the attachment shall be quashed, the court shall make the necessary order restoring the property to the defendant, yet this is but declaratory of what would have been its disposition without the statute.

Before the attachment was quashed, the title to the property levied upon thereby still remained in the defendant Smith. After the judgment quashing it, if no proceedings were taken to suspend this judgment, the full title to the property, divested of the attachment lien, would revert to the defendant; and with or without the order, Smith had the right to have proceeded against the clerk, if he had

refused, without good cause, to restore it. It required no judgment of the court to ascertain the amount, or to vest into Smith the title or right of possession.

That money in the hands of an assignee in bankruptcy is not subject to garnishment is placed upon the ground that the effects of a bankrupt cease to be his property, but the title is vested into the assignee; and that to prevent such garnishments would defeat the whole policy of the bankrupt law; and upon the further ground that the jurisdiction of the bankrupt court does not cease with the order of distribution. That it is clearly within the power of the court and its duty to see that the assignee pays over to the distributees the dividends awarded to them, and that until this is done he is not entitled to his final discharge. That this protection is exclusive, and that no other court can touch or bind the assets of the bankrupt or authorize any suit against the assignee, who is the officer of the court. Drake on Attachments, § 511; Freeman on Executions, 129; *In re* Cunningham, 9 Cent. Law Jour., 208.

There is, however, high authority to the effect that money in the hands of an assignee for the benefit of insolvent debtors can be reached by process of garnishment, when, as in this case, an order has been made to pay it over to the creditors. Freeman on Executions, § 129; Jones *v.* Gorham, 2 Mass., 375; Decoster *v.* Livermore, 4 Mass., 101.

That disbursing officers, federal, state and county, are not subject to be garnished, is based upon grounds of public policy, as thereby the appropriations of the government might be defeated, to the consequent embarrassment, if not entire defeat, of the public service; and that until paid over to the person entitled, the fund could not in any legal sense be considered as part of his effects. Freeman on Executions, § 132.

Upon a similar ground to that last mentioned, that the money does not belong to a judgment creditor until actually paid over to him, it has been by some courts held (though the reason in such cases is not satisfactory) that money in the hands of a sheriff collected on execution is not subject to garnishment at the suit of a creditor of this judgment creditor. Drake on Attachments, §§ 505–6, citing among other authorities the case of Turner *v.* Fendall, 1 Cranch, 117.

This court has adopted a different rule. In Hamilton *v.* Ward, 4 Tex., 356, it is decided that where the sheriff has one execution in favor of a party, and another against him, he may apply the money collected on the first to the satisfaction of the second; and it mat-

ters not that in the one case the party for whom the money was first collected was the sole plaintiff, and that in the other he was co-defendant with another. In that case this court approved Dolby v. Mullens, 3 Humph., 437, which, upon this question, does not approve the reasoning in Turner v. Fendall, 1 Cranch, 117, *supra*.

In Walton v. Compton, 28 Tex., 569, it is decided that a sheriff not only has the authority, but that it is his duty, to apply the surplus in his hands arising from one execution sale to another execution held by him against the same execution debtor.

By other courts of very high authority, that money in the hands of a sheriff is not subject to garnishment is based, not on the ground that it is strictly *in custodia legis*, but upon the peculiar phraseology of the writ of execution itself, which commands the sheriff to execute the same by making the money and bringing it into court on the return day thereof. Gaither v. Ballew, 4 Jones' Law (N. C.), 488, will be found to be a valuable opinion upon this question, in which many of the authorities are reviewed, and the previous cases of Alston v. Clay, 2 Hayw., 171, and Overton v. Hill, 1 Murph., 47, are overruled.

Although money and other chattels in the possession of executors, administrators and guardians, during the process of administration, are usually conceded to be in the custody of the law and not subject to garnishment, yet there are numerous authorities to the effect that when the share of a creditor, heir, legatee, ward or other person entitled to money in their hands has been settled by the court, and the right thereto has become fixed, absolute and capable of enforcement by action at law, it is no longer regarded as *in custodia legis*, and is then subject to garnishment. Freeman on Executions, § 131, citing authorities in notes.

The comments of the learned judge, *In re* Cunningham, 9 Cent. Law Jour., 210, upon the doctrine of those cases which form an exception to the general rule that money in the custody of the law is not subject to other process, may well be applied to the one under consideration: "That where the court having custody of the money, fund or property, and jurisdiction of the subject matter, makes a final determination of the matter, and awards judgment as to the amount to be paid to each individual distributee, the officer thus required to make payment may be made personally liable for his failure to make the payment, and therefore a garnishment against him, resulting in a personal judgment, is no invasion of the jurisdiction of the court having the property in custody, and no encroachment upon the possession of that court. On the contrary,

the garnishment recognizes the action of the court ordering the payment or distribution, and founds itself upon the judgment of that court. When the judgment in the garnishment proceeding must needs be against the garnishee in his representative capacity, the proceeding must fail, because it could be levied neither upon the garnishee's private property nor upon the property he represents; not upon the former, because the judgment is not personal, nor upon the latter, because the property which he represents is in the possession and under the control of another court, whose possession and jurisdiction cannot be invaded."

It is believed that the legal effect of such an order to pay over money to the defendant, as made in this case, is not that the money under proper legal process cannot in any event be diverted into another channel, but that it simply serves to determine the ownership, and to divest, as between the parties to the original suit, the court of any further jurisdiction over the subject matter of that particular fund, and that thereupon the same, like any other property, becomes subject to the process of the law.

Garnishment is a well known legal process, and under the statute the writ commands the person garnished to answer upon oath what effects, if any, he has in his possession belonging to the defendant. R. S., art. 188. The word effects includes all personal property and all interests therein. Id., art. 3140, subd. 12.

In the well considered case of Gaither v. Ballew, 4 Jones' Law (N. C.), 488, *supra*, the conclusion was reached, that, when a case falls within the words of the statute, to take it out of its operation the fund must be unascertained and of such a nature that a court of law cannot deal with it; or it must be in the hands of an officer, the performance of whose duty in regard to it would be prevented or embarrassed if subject to be interfered with by the claim of an attaching creditor.

In that case it was held that money in the hands of a clerk who was master in chancery, arising from the sale of land for partition, was, after an order for partition of the money, subject, in his hands, to garnishment.

In the recent case of Dunlop v. The Patterson Fire Insurance Co., 74 N. Y., 145, it was held that "money deposited with the clerk of a court in lieu of an undertaking on appeal, is liable to an attachment in an action by a third person against the depositor. The right of the latter in the deposit is not contingent. The ultimate title remains in him subject to the claim of the respondent on appeal."

It is not perceived why the case under consideration should not

fall within the principle of the above cases. The amount and ownership of the money in the hands of the clerk is fixed and determined, and the court has virtually no further necessary disposition over it than that already ordered. If the clerk wrongfully fails to make this, he is liable on his bond at the suit of the defendant in attachment; but if, by subsequent judgment of a court of competent jurisdiction, to which this defendant is a party, he make a different disposition of it, it is believed that this should be a sufficient answer and justification for the clerk. If garnished he is entitled to his costs and expenses; that he might be prejudiced by the failure to make answer in due time, or should he make an improper answer, applies alike to all cases of garnishment, as no garnishee is presumed to have any personal interest in the question to whom the money should go; should he go out of office pending the contest, his successor is in law his representative, and holds the money in the same right and subject to the same liabilities that he himself did, and a proper payment of the money to his successor under such circumstances should release him from further liability; and the fact that he may suffer some inconvenience from the garnishment is but an incident of his office, and which he must take *cum onere*.

Besides, in this case there can be no possible conflict of jurisdiction, as the proceedings are in the same court, and virtually would have been between the same parties if Schneider & Davis had been permitted to have intervened. The attachment and garnishment were but mere incidents to secure the same debt, and judgment could not have been rendered against the garnishee, subjecting the property to this debt, until final judgment had been rendered in favor of Schneider & Davis against Smith. Until final judgment in the original case, and the revision by the appellate court of the judgment of the court below quashing the attachment, were this sought,— there being no right of appeal with us from an interlocutory judgment,— it cannot be said that the attachment was wrongfully sued out. If it should finally be found that it was, the defendant would be protected in his rights by the statutory bonds required, both in cases of attachment and garnishment. If it should be found that the attachment was not wrongfully sued out, then as the garnishment has not been allowed, Schneider & Davis, if Smith is insolvent, would lose their debt, though they have by legal process diligently sought to secure it.

In a recent case at the last Galveston term (Blum v. Davis, 56 Tex., 423), the court below quashed an attachment by an interlocutory judgment, from which, of itself, there was no appeal. This judgment was

excepted to, and the point reserved. The court, on motion of the plaintiffs in attachment, suggesting the insolvency of the defendant, ordered that the property remain in the hands of the sheriff, upon proper bond being given, to await the final decision. On appeal from the final judgment this court reversed the interlocutory judgment of the court below quashing the attachment, but sustained its action ordering the sheriff to retain the property.

In the present case, the affidavit for the writ of garnishment was based upon the insolvency of the defendant, and the statute required a bond to be given for his protection. R. S., arts. 183–4.

It is true that there was no order of the court that the clerk retain the property as in the above case, and the action of the court may be taken as an indication of the want of either the will or the power to grant relief in such cases; but the plaintiffs here sought to accomplish by the legal process of garnishment given them by statute, independently of the discretion of the court, which might be exercised against them on motion, that which in the other case was sought and granted on mere motion. In both cases when the attachment was quashed, abstractly considered, the property belonged to the defendant divested of the lien, and should have been restored to him. I fail to perceive any substantial reason why, in the one case, the plaintiffs could get the benefit of it on mere motion, and why, in the other, they could not by formal process provided by statute.

I am of the opinion that the garnishment should have been sustained. As in the case last above referred to, the attention of the legislative department is again respectfully called to the propriety of further legislation on this subject.

In the opinion of a majority of the court, the judgment of the court below should be affirmed, and it is accordingly so ordered.

AFFIRMED.

[Opinion delivered October 10, 1882.]